## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

CHARLES PEARCE                                                                    PLAINTIFF

V.                                    4:14CV00604 SWW/JTR

DOUGLAS, Lieutenant,
Faulkner County Detention Center, et al.                            DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Susan Webber Wright. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Wright can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I.  Introduction

Plaintiff, Charles Pearce, has filed this *pro se* § 1983 action alleging that, while he was confined in the Faulkner County Detention Center ("FCDC"), Defendants violated his constitutional rights by subjecting him to inhumane conditions of confinement and failing to provide him with adequate medical care.  *Docs. 2 & 6.*

Defendants Douglas, Holmes, Bishop, and Jackson have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts.  *Docs. 30, 31, & 32.* Plaintiff has filed a one-page Response, without any supporting evidence.  *Doc. 33.*

For the following reasons, the Court recommends that Defendants' Motion for Summary Judgment be granted, and that the case be dismissed, with prejudice.[1]

## II. Facts

The relevant facts, viewed in the light most favorable to Plaintiff, are as follows:

1.     Plaintiff has degenerative disc disease that causes him to have chronic

---

[1]   Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact.  *Celotex,* 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial.  *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

pain in his back and neck. *Doc. 2 & 6.*

2.      On July 22, 2014, Plaintiff was arrested and booked into the FCDC. During intake, a non-party officer recorded that Plaintiff was "disabled," without any explanation of the extent of his disabilities.[2] *Doc. 32, Ex. 2.*  Plaintiff did not, at that time, request any special accommodations for his physical limitations.

3.      On September 9, 2014, Plaintiff filed a grievance stating:

> I am disabled. I don't need to be on the top bunk because of my neck and back. Need to see the nurse to get a statement please and the shower. Thank you. I will also need a 1983 form.

*Doc. 2 at 5.*  Plaintiff did not clarify how he was"disabled" or explain his vague reference to needing to see a nurse about "the shower."

4.      The next day, Defendant Sergeant Jackson reviewed that grievance and moved Plaintiff to a bottom bunk in Unit 2, which also contains a handicap accessible shower that was equipped with handrails and a rubber mat. *Doc. 2 at 5; Doc. 32, Ex. 2.*

5.      On September 23, 2014, Plaintiff filed a grievance stating that he was "80% disabled" and that he had fallen three times since arriving at the FCDC.[3]  He

---

[2] Neither party has explained the extent of Plaintiff's disabilities or resulting physical limitations.

[3] There is no evidence Plaintiff filed a grievance form, medical request form, or otherwise informed any FCDC officials about these alleged prior falls.

also stated that the handicap accessible shower in Unit 2 was not working. *Doc. 2 at 8.*

6.      On September 24, 2014, around 5:00 to 6:30 p.m., Plaintiff fell while showering in a non-handicap accessible shower in Unit 2.   Plaintiff alleges that he was "bleeding profusely" from a cut on his head that needed stitches. *Doc. 6 at 1.*

7.      Sometime later that evening, Plaintiff filed a grievance stating that the handicap accessible shower in Unit 2 was still broken, and that he fell and hit his head while showering in the non-handicapped shower.  *Doc. 2 at 4, 7, & 9.*  In his grievance, he did *not:* (1) explain the extent of his injuries; (2) ask for medical treatment; or (3) allege that he had been denied medical care. Similarly, although Plaintiff was familiar with FCDC's medical request procedure, he never filed a medical request form seeking treatment for the head injuries he alleged sustained during his September 24, 2014 fall.[4]

8.      On September 25, 2014, at approximately 2:00 p.m., Plaintiff told Defendant Johnson about his fall in the shower on September 24, 2014. *Doc. 32, Ex. 2 at 6.* When Defendant Jackson asked Plaintiff if needed any medical care, Plaintiff said he was "ok." *Id.*  He did not tell Defendant Jackson that he had cut his head open or that he thought he needed stitches.  Instead, he asked Defendant Jackson for "some

---

[4] Plaintiff previously had filed a medical request form seeking treatment for constipation. *Doc. 2 at 12.*

aspirin," which she gave him.  *Id.* Defendant Jackson then completed an incident report documenting their discussion. *Id.*

9.      On the same day, Defendant Johnson responded to Plaintiff's September 23 and 24, 2014 grievances.  In her responses, Defendant Johnson explained that, prior to receiving Plaintiff's September 23 and 24 grievances, no one at the FCDC was aware that he was 80% disabled or that he needed "shower accommodations."  She immediately arranged for Plaintiff to be moved to a cell in the FCDC's Medical Unit, where he could use a shower chair.  *Doc. 2 at 7 & 8; Doc. 32 at Ex. 1.*

10.     Plaintiff admits that, on September 25, 2014, he was transferred to the FCDC medical Unit, where he was seen by a member of the medical staff.[5]

11.     On or about February 3, 2015, Plaintiff was released from the FCDC.[6] *Doc. 20.*

## III.  Discussion

Defendants Douglas, Holmes, Bishop, and Jackson argue that they are entitled to summary judgment on the conditions of confinement and inadequate medical care

---

[5]  Neither party has explained what, if any, medical care Plaintiff received at that time.

[6]  Thus, Plaintiff's request for injunctive relief is now moot. *Zajrael v. Harmon*, 677 F.3d 353, 354(8th Cir. 2012); *Owens v. Isaac,* 487 F.3d 561, 564 (8th Cir. 2007) (same).

claims Plaintiff has raised against them in both their official and individual capacities.[7]

The Court agrees.

## A.    Plaintiff's Official Capacity Claims

Plaintiff's claims against Defendants, in their official capacities, are actually

claims against Faulkner County. *See Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir.

2010).  Faulkner County cannot be held vicariously liable, in a § 1983 action, for the

acts of its employees. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

Instead, Faulkner County can only be held liable for any injuries to Plaintiff that were

caused by its official policies, customs, or practices. *See Jenkins v. Cnty. of Hennepin,*

*Minn.*, 557 F.3d 628, 631-32 (8th Cir. 2009).

It is *undisputed* that Faulkner County had official policies regarding medical

care for detainees and accommodations for detainees with special needs. *Doc. 32,*

*Exs. 3-6.*  Plaintiff does *not* challenge the constitutionality of those policies.  Instead,

he alleges that Defendants failed to follow those facially constitutional policies. That

allegation cannot, as matter of law, be the basis for a § 1983 claim against Faulkner

County.  *See Johnson v. Blaukat,* 453 F.3d 1108, 1114 (8th Cir. 2006) (finding no §

1983 liability where the county's policies, which were facially constitutional, were not

---

[7] Defendants' also argue that they are entitled to summary judgment on any potential claims under the American's with Disabilities Act. *Doc. 31.*  Plaintiff, however, did *not* raise an ADA claims in his Complaint, Amended Complaint, or Response to the Motion for Summary Judgment. *See Docs. 2, 6, & 33.* Thus, there is no need to address that argument.

followed by its employees). Accordingly, the claims raised against Defendants, in their official capacities, should be dismissed, with prejudice.

**B.      Plaintiff's Individual Capacity Claims**

**1.      Inhumane Conditions of Confinement Claim**

Plaintiff alleges that Defendants subjected him to inhumane conditions of confinement when they failed to provide him with access to a handicap accessible shower that functioned properly. To prevail on that claim, Plaintiff must prove:  (1) he was forced to live in conditions that, objectively, constituted a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by those conditions. *See Davis v. Oregon Cnty., Mo.*, 607 F.3d 543, 548-49 (8th Cir. 2010); *Butler v.* Fletcher, 465 F.3d 340, 344 (8th Cir. 2006).   As to the subjective element, the Eighth Circuit has emphasized that  negligence and even gross negligence are not enough.  *Id.*  Instead, a plaintiff must prove that each defendant "actually knew of and recklessly disregarded" a substantial risk of harm.  *Butler*, 465 F.3d at 345.   In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

Plaintiff has not produced *any evidence* suggesting that Defendants Douglas, Holmes, or Bishop knew that he was physically disabled or that he needed to use a

handicap accessible shower.

While Defendant Jackson learned from Plaintiff's September 9 grievance that he needed a bottom bunk because he was disabled, the grievance did not explain the extent of Plaintiff's physical disabilities. Similarly, Plaintiff's vague request to see a nurse about the shower, did not make it clear that he needed to use a handicap accessible shower.

More importantly, the parties agree that, after reading Plaintiff's September 9 grievance, Defendant Jackson immediately transferred Plaintiff to Unit 2, which contained a handicap accessible shower. There is *no evidence* that Defendant Jackson knew that the handicap accessible shower in Unit 2 was broken until September 25, which was when she: (1) spoke to Plaintiff in person and learned about his September 24 fall; and (2) read his September 23 and 24 grievances stating that he was 80% disabled and that handicap accessible shower in Unit 2 was broken.[8] It is undisputed that, immediately after speaking to Plaintiff on September 25, Defendant Jackson transferred Plaintiff to the Medical Unit, where he was able to use a shower chair.

---

[8] There is no evidence that Defendant Jackson read Plaintiff's September 23 or 24, 2014 grievances before he fell. However, even if she did read both grievances on the days that they were filed, a one or two day delay in providing Plaintiff with access to working handicap accessible shower would not constitute deliberate indifference -- especially, in light of the fact that Plaintiff could have forgone showering, for a few days, while he gave Defendant Jackson an opportunity to read his grievances and take corrective action. *See Abernathy v. Perry*, 869 F.2d 1146, 1149 (8th Cir. 1989) (finding no constitutional violation where a prisoner was able to bathe only twice a week); *Jones v. Houston,*, 2007 WL 3275125, *8 (D. Neb. 2007) (unpublished opinion) (finding no constitutional violation where a prisoner was not able to bathe for thirteen days).

Plaintiff does not allege that he suffered any falls thereafter.  Based on the undisputed facts, there is no evidence that Defendant Jackson subjectively knew of any risk posed by Plaintiff having access to the handicap accessible shower in Unit 2, and, as soon as that risk was brought to her attention on September 25, Plaintiff was immediately transferred  to the Medical Unit.

Accordingly, Defendants Douglas, Holmes, Bishop, and Jackson are entitled to summary judgment on the conditions of confinement claim Plaintiff has asserted against them, in their individual capacities, and that claim should be dismissed, with prejudice.

## 2. Inadequate Medical Care Claim

Plaintiff alleges that Defendants Douglas, Holmes, Bishop, and Jackson violated his constitutional rights when they failed to provide him with any medical care for the cut to his head which was allegedly bleeding profusely and should have been closed with stitches. *Doc. 6 at 1*.

To prevail on that claim, Plaintiff must prove that:  (1) he had an objectively serious medical need; and (2) each of the Defendants subjectively knew of, but deliberately disregarded,  that serious medical  need.  *See Estelle v. Gamble*, 429 U.S. 97 (1976); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010).

As to the first element, there is no evidence to support Plaintiff's allegation that

he sustained a head injury on September 24 that bled profusely and should have been closed with stitches. To the contrary, Defendant Jackson's September 25 incident report does not mention that Plaintiff had *any visible injuries*. Her report also states that Plaintiff told her that he was "okay," and that he only requested an aspirin. Further, it is *undisputed* that Plaintiff never filed any medical request forms seeking treatment for a profusely bleeding head injury.

While Plaintiff mentions, in his September 24 grievance, that he hit his head when he fell in the shower, he does *not* allege, as he does in this lawsuit, that he was "bleeding profusely" or that he needed *any medical treatment*. Thus, it is doubtful that Plaintiff actually suffered an objectively serious medical need. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) (holding that: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"); *Reed v. City of St. Charles, Mo.* 561 F.3d 788, 790-91 (8th Cir. 2009) (explaining that: "A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor").

Nevertheless, even if the Court presumes that Plaintiff sustained an objectively serious head injury during his September 24 fall, there is no evidence that,

subjectively, any of the Defendants were deliberately indifferent to his need for medical treatment for that injury. *See Bryan,* 141 F.3d at 1291 (explaining that "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness"). Specifically, there is *no evidence* that Defendants Holmes, Bishop, or Douglas knew that Plaintiff had fallen or was injured on September 24.

Further, the evidence establishes that Defendant Jackson did not learn about Plaintiff's September 24 fall until she talked to him on September 25. During her conversation with Plaintiff, she: (1) asked if he needed any medical treatment; (2) granted his request for aspirin; and (3) transferred him to the Medical Unit where he was examined by non-party medical personnel. Based on these undisputed facts, there is simply nothing in the record to support Plaintiff's claim that Defendant Jackson failed to provide him with adequate medical care after his September 24 fall in the shower, or that she ever deliberately disregarded any of his serious medical needs.

Finally, Plaintiff has not produced any evidence suggesting that he was harmed by the, at most, one day delay between the date of his fall on September 24 and the next day when he was taken to the Medical Unit for evaluation and treatment. *See Gibson v. Weber*, 433 F.3d 642,  646-47 (8th Cir. 2006) (explaining that, to avoid summary judgment, an inmate must produce verifying medical evidence establishing the detrimental effect of the alleged delay in medical treatment); *Crowley v.*

*Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (same).

Thus, Defendants Holmes, Bishop, Douglas, and Jackson are entitled to summary judgment on the inadequate medical care claims Plaintiff has asserted against them, in their individual capacities, and those claims should be dismissed, with prejudice.[9]

## IV.  Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.      Defendants' Motion for Summary Judgment *(Doc. 30)* be GRANTED, and that the claims raised against Douglas, Holmes, Bishop, and Jackson, in their official and individual capacities, be DISMISSED, WITH PREJUDICE.

2.      The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

---

[9] Defendants have also raised the defense of qualified immunity.  However, because the Court concludes that there is insufficient evidence of a constitutional violation, there is no need to address qualified immunity.  *See Schmidt v. City of Bella Villa,* 557 F.3d 564, 574 (8th Cir. 2009); *Ambrose v. Young*, 474 F.3d 1070, 1077 n.3 (8th Cir. 2007).

Dated this 2nd day of September, 2015.

_____
UNITED STATES MAGISTRATE JUDGE